FEB 10 2009

ORDERED in the Southern District of Florida on ____________________

A. Jay Cristol, Chief Judge Emeritus
United States Bankruptcy Court

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

TRADEWINDS AIRLINES, INC.

Debtor.
______________________________________/

Chapter 7 Case

Case No. 08-20394-BKC-AJC

**MEMORANDUM DECISION GRANTING MOTION TO ENFORCE THE AUTOMATIC STAY AGAINST TRADEWINDS HOLDINGS, INC. AND COREOLIS HOLDINGS, INC.**

On January 7, 2009 a hearing was held before this Court on the motion of Barry Mukamal, Chapter 7 Trustee ("Trustee") for the bankruptcy estate of TradeWinds Airlines, Inc. ("TradeWinds"), to enforce the automatic stay ("Motion") against Coreolis Holdings, Inc. ("Coreolis") and Tradewinds Holdings, Inc. ("Holdings") [D.E. No. 236] (collectively, Coreolis and Holdings are sometimes referred to herein as, "Coreolis"), included in

the Trustee's response to Coreolis' objections [D.E. Nos. 231, 235] to the Trustee's application for approval of (I) employment of Tuggle Duggins & Meschan, P.A. and the Law Office of Violet Elizabeth Grayson as special litigation counsel to the Trustee *nunc pro tunc* to the conversion date pursuant to 11 U.S.C. §327(E), and (II) contingency fee arrangement pursuant to 11 U.S.C. §328 [D.E. No. 229]. The Court has considered the Trustee's Motion, Coreolis' Response to the Motion [D.E. No. 235], the Trustee's Reply [D.E. No. 254], affidavits in support of the parties' respective positions [D.E. Nos. 236 (Exhs. A-C), 255, 256], arguments of counsel, court papers filed with the Court by the Trustee [D.E. No. 264][1] and documents submitted by Coreolis.

On June 25, 2008, TradeWinds filed a Chapter 11 bankruptcy case in this Court. On June 27, 2008, a default judgment in the total amount of $54,867,872.49 ("Judgment" or "Default Judgment") was entered in favor of the Chapter 11 debtor, TradeWinds, against CS Aviation in the General Court of Justice, Superior Court Division, County of Guilford, North Carolina, Case No. 03 CVS 12215 ("North Carolina case"). On October 29, 2008, the TradeWinds bankruptcy case was converted to a case under Chapter 7 of the Bankruptcy Code and the Trustee was appointed.

Upon consideration, the Court finds the stay is applicable to the proceedings pending in the Superior Court Division of the General Court of Justice, in Guilford, North Carolina as they relate to the revision, modification, correction and amendment of the Default Judgment entered

[1] During the hearing, the Court requested that the parties submit certain documents related to the Judgment. Among the documents submitted, the Court has reviewed the following:

1. TradeWinds' Motion for Default Judgment;
2. The Affidavit of Jeff Conry in support of TradeWinds' Motion for Default Judgment;
3. TradeWinds' Brief in Support of TradeWinds' Motion for Default Judgment;
4. The Default Judgment entered in favor of TradeWinds; and
5. The Amended Answer, Counterclaim, and Third Party Complaint.

therein on June 27, 2008 by the Honorable Ben F. Tennille. From a review of the documents and pleadings of record, the Default Judgment obtained by TradeWinds against C-S Aviation Services, Inc. ("CS Aviation") in the North Carolina court is the exclusive property of the bankruptcy estate. Accordingly, all efforts to revise, modify, correct or amend the Default Judgment are stayed pending further order of this Court.

**BACKGROUND**

Coreolis, through its wholly owned subsidiary, Holdings, formerly owned all of the stock in TradeWinds. On or about November, 2006, Coreolis transferred its stock in TradeWinds to Deutsche Bank pursuant to the terms of a pledge agreement. Notwithstanding, on November 12, 2008, upon learning that the Judgment had been entered, Coreolis and Holdings filed a motion to revise the Judgment in the North Carolina case, requesting that the Judgment be modified to include them as co-judgment creditors. Coreolis and Holdings requested that they be included as plaintiffs in the Judgment because their names appeared as third party plaintiffs in the third party complaint and they had asserted claims collectively with TradeWinds in the third party complaint filed against CS Aviation. Additionally, on November 7, 2008, Coreolis and Holdings moved to intervene as party plaintiffs in TradeWinds' action to pierce the corporate veil of CS Aviation and recover the Judgment from its principals, George Soros and Pernendu Chatterjee, in the case styled *TradeWinds Airlines, Inc. v. George Soros and Pernendu Chatterjee*, pending in the United States District Court for the Southern District of New York, case no.: 08-cv-5901 (JFK) ("New York action"). Since filing their motions in the North Carolina and New York actions, Coreolis and Holdings have continued to file court papers in connection with their original motions in both courts. Neither Coreolis nor Holdings has sought or obtained stay relief.

After the Trustee was appointed, a suggestion of bankruptcy was filed by the Trustee in

the North Carolina action. Some time thereafter, in an apparent response to Coreolis and Holdings continuing to prosecute their motions in the North Carolina and New York actions, the Trustee filed a motion to enforce the automatic stay, arguing that pursuant to 11 U.S.C. §541, the Default Judgment and the right to attempt to collect on the Judgment are property of the TradeWinds bankruptcy estate. The Trustee argued that Coreolis and Holdings' actions seeking to include themselves in the Judgment as co-judgment creditors and seeking to intervene in the New York action were subject to the automatic stay, and by continuing to pursue relief in the North Carolina and New York actions, they are now in violation of the automatic stay provisions of 11 U.S.C. §362.

In support of its Motion for Default Judgment, TradeWinds submitted the affidavit of Jeffrey Conry, its former CEO and President ("Conry") (D.E. 264, Exh. 2]. In his affidavit, Conry attested to the following facts: TradeWinds negotiated with CS Aviation for the lease of certain aircraft; during the course of these negotiations CS Aviation made certain false representations to Conry about the condition of the aircraft; and the representations were relied upon by TradeWinds to its detriment when it agreed to lease engines from CS Aviation. Conry Aff. ¶¶ 8-10.

As a result of the aircraft not being in the condition represented by CS Aviation, Conry attested that TradeWinds suffered the following damages:

1) Lost engine cycles valued at $8,899,779;
2) Lost Revenue from Aero Union Lease values at $4,081,500;
3) Additional Costs associated with Aero Union Lease of $1,434,669;
4) Wasted Training and Labor Expenses of $545,580.94; and
5) Costs associated with maintaining an airframe with failed engine of $1,365,000.

The foregoing damages, all of which were suffered by TradeWinds alone, total $16,326,528.93.

Conry Aff. ¶¶ 22-24.

Nothing in Conry's affidavit related to damages suffered by Coreolis or Holdings. In fact, in its brief in support of the Motion for Default Judgment, TradeWinds specifically stated that the damages being sought related to TradeWinds only. In the legal brief, TradeWinds stated:

> This Motion for Default **Judgment is sought only on behalf of Tradewinds Airlines, Inc., not on behalf of Coreolis Holdings, Inc. and/or Tradewinds Holdings, Inc.** as **these companies are no longer affiliated with Tradewinds Airlines** and are not represented by the below signed counsel [emphasis added].

D.E. 264, Exh. 3 – TradeWinds' Brief in Support of Motion for Default Judgment, p. 2, FN 1.

In the Judgment, the North Carolina court made the following factual findings:

1) TradeWinds and CS Aviation negotiated aircraft leases and TradeWinds relied on the representations of CS Aviation concerning the quality of the aircraft engines. [D.E. No. 264, Exh. 4 - Default Judgment entered in favor of TradeWinds, Findings of Fact, ¶¶ 1-2];

2) The engines failed precipitously and CS Aviation had misrepresented the quality of the engines to TradeWinds. Default Judgment, Findings of Fact ¶¶ 1-2;

3) CS Aviation made numerous false statements, CS Aviation knew the misrepresentations were false, and CS Aviation intended to deceive TradeWinds so as to induce TradeWinds to enter into engine leases. Default Judgment, Findings of Fact ¶¶ 6-7; and

4) As a result of the breach of the lease agreements and the misrepresentations by CS Aviation, TradeWinds suffered substantial losses totaling $16,326,528.94.

Based upon these factual findings, the North Carolina court found TradeWinds (i) was entitled to be awarded the damages attested to by Conry in his affidavit, (ii) CS Aviation violated Chapter 75 of the North Carolina General Statutes, and as a result, (iii) TradeWinds was entitled to a trebling of the damages it suffered. The Judgment further awarded TradeWinds prejudgment interest of $5,888,285.67. The Judgment does not specifically address any damages

suffered by either Coreolis or Holdings.

Coreolis and Holdings suggest to this Court that the entry of the Default Judgment by the North Carolina court in the name of TradeWinds alone was an error or a mistake, and the automatic stay does not apply to prevent the North Carolina court from correcting its own error or mistake. This Court does not agree. First, after reviewing the Third Party Complaint, TradeWinds' Motion for Default Judgment, the Affidavit of Jeffrey Conry, TradeWinds' Brief in Support of the Motion for Default Judgment, and the Default Judgment, it does not appear the North Carolina court made a mistake by omitting Coreolis and Holdings from the Judgment because the Judgment appears to be based on (i) the liability of CS Aviation to TradeWinds, and (ii) damages suffered exclusively by TradeWinds. However, even if an error or mistake occurred, such error or mistake does not insulate the proceeding from the automatic stay. The Judgment is property of the estate and any action taken with respect to that Judgment, whether to correct an error or to vacate the Judgment completely, is an act in violation of the stay.

## ANALYSIS

Section 541 of the Bankruptcy Code provides that the commencement of a case under the Code creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a) (1). As the sole holder of the Judgment entered in the North Carolina action, TradeWinds has both a legal and equitable interest in the Judgment. "Where a cause of action belonging to the debtor has been merged into judgment prior to bankruptcy, the estate succeeds to all rights under such judgment." *Collier on Bankruptcy*, 15th Edition Revised, ¶ 541.08[5]. *See also United States v. Whiting Pools, Inc.*, 462 U.S. 198 (1983) (noting that a debtor's causes of action are assets of the bankruptcy estate). Accordingly, this Court

has jurisdiction over the Judgment and all other assets of the TradeWinds bankruptcy estate pursuant to 28 U.S.C. § 1334.

The automatic stay under 11 U.S.C. §362(a)(1) prohibits Coreolis and Holdings from prosecuting their motion to revise the Judgment. Furthermore, Section 362(a)(3) provides that "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" is stayed upon the filing of a bankruptcy petition.

Section 362(a)(3) "directs stays of any action, whether *against the debtor or third-parties*, to obtain possession or to exercise control over property of the debtor." *A.H. Robins Company, Inc. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986) (emphasis in original).[2] No party involved in the actions pending in North Carolina or New York has sought relief from the automatic stay from this Court. As such, the automatic stay remains in place with its full force and effect.

A bankruptcy court has original jurisdiction over all civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). A proceeding is related to a bankruptcy case when "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984); *Miller v. Kemira, Inc.* (*In re Lemco Gypsum, Inc.*), 910 F.2d 784, 788 (11th Cir. 1990) (adopting the *Pacor* "conceivable effect" jurisdiction test). *See also*, *Carter v. Rodgers*, 220 F.3d 1249, 1253-54 (11th Cir. 2000) (bankruptcy court has jurisdiction over a matter if the resolution of the matter

---

[2] Although the Trustee is not attempting to extend the protection of the automatic stay provisions to a non-debtor third party as in *A.H. Robin*, he is nonetheless seeking to protect the Judgment from Coreolis' and Holdings' assaults because the Judgment is property of the TradeWinds bankruptcy estate.

could conceivably impact the amount of money in a bankruptcy estate.). The Judgment may prove to be one of the most valuable assets of the TradeWinds bankruptcy estate. Coreolis and Holdings' multiple motions and proceedings to include them as judgment creditors in the Default Judgment are efforts to exercise control over an asset of the estate. Such actions are contrary to the purpose and protections afforded by the automatic stay and are prevented by the provisions of Section 362.

In addition, the damages awarded in the Judgment appear to be specific to TradeWinds, and unrelated to any damages suffered by Coreolis or Holdings. In the North Carolina and New York actions, Coreolis is not pursuing CS Aviation for damages that are independent and distinct from TradeWinds. Rather, Coreolis and Holdings are claiming they should be included in the Judgment as co-judgment creditors because they were named as third party plaintiffs in the third party complaint against CS Aviation, therein asserting claims collectively with TradeWinds, and are thereby entitled to share in the Judgment with TradeWinds. However, Coreolis' and Holdings' claims are derivative of TradeWinds' claims, and Coreolis' and Holdings' motion to revise the Judgment is therefore a proceeding "against the debtor" as that term is used in 11 U.S.C. §362(a)(1) and (3) because it seeks to share in an asset that is property of the estate. In the New York action, the Trustee seeks to pierce the corporate veil of CS Aviation, asserting that its principals are alter egos of CS Aviation and liable to TradeWinds on the Judgment. Such a cause of action is also property of the bankruptcy estate, and the Trustee is the proper party to pursue the action for the benefit of all creditors. *See*, *In the Matter of Eagle Enterprises, Inc.*, 265 B.R. 671 (E.D. Pa. 2001). Coreolis and Holdings cannot prosecute the New York action to recover on the Judgment for their own benefit.

"The automatic stay of §362(a) applies by its terms not only to actions against the debtor

. . . but also to actions seeking to obtain property of the bankruptcy estate." *Amedisys, Inc. v. National Century Financial Enterprises, Inc.* (*In re National Century Financial Enterprises, Inc.*), 423 F.3d 567, 578 (6th Cir. 2005). "[A]n action taken against a nondebtor which would inevitably have an adverse impact upon the property of the estate must be barred by the automatic stay provision." *Licensing by Paulo, Inc. v. Sinatra* (*In re Gucci*), 126 F3d 380, 392 (2d Cir. 1997) citing *In re 48th St. Steakhouse, Inc.*, 835 F.2d 427, 431 (2d Cir. 1987).

The Trustee seeks to enforce the automatic stay against Coreolis and Holdings in defense of their attempt to reduce the value of the Judgment to the estate by way of their motion to revise the Judgment. The only way Coreolis can obtain what it refers to as its "rightful share of the default judgment" is to diminish the bankruptcy estate's share; and, to do so is in violation of the automatic stay. The Trustee is not attempting to enforce the stay with respect to any claims Coreolis and/or Holdings may have independent of TradeWinds against CS Aviation. And to the extent Coreolis and Holdings do not seek to revise the Judgment, but instead seek to pursue claims against CS Aviation for damages actually suffered by them, the stay does not apply and they may proceed to judgment on those independent claims. However, to the extent Coreolis and Holdings seek claims derivative of TradeWinds, such claims are stayed from prosecution.

In a final note, the Court feels compelled to address some concerns stated by Judge Tennille at one of the recent hearings in the North Carolina court. If the Default Judgment has been entered improperly, in error or by mistake, then Coreolis and Holdings may file a claim in this bankruptcy case and prove why they are entitled to share in the damages awarded in the Judgment. Through the claims administration process, this Court will determine their entitlement to the Judgment proceeds. However, without relief from the automatic stay, Coreolis and Holdings are precluded from prosecuting their motion(s) to revise the Judgment, which this

Court has determined is property of the bankruptcy estate.

## CONCLUSION

The Court concludes that the Trustee has demonstrated that the Default Judgment is property of the TradeWinds bankruptcy estate. Any action by Coreolis or Holdings in North Carolina, New York or elsewhere that may further cause the value of the Judgment to be impaired vis-à-vis the bankruptcy estate and its creditors is prohibited by the automatic stay. It is therefore

ORDERED AND ADJUDGED as follows:

1. Coreolis and Holdings shall cease their prosecution of all pending motions to revise, correct, alter, amend or modify the Default Judgment by filing formal withdrawals of same in the respective cases pending in the North Carolina and New York actions.

2. Coreolis and Holdings shall file no motions or other court papers seeking to share in the Default Judgment or raising claims against non-debtor third parties that are derivative of TradeWinds.

3. This order is without prejudice to Coreolis and Holdings filing a motion for relief from the automatic stay before this Court in the future.

4. To the extent that Coreolis and Holdings have claims that are distinct and independent of the claims of TradeWinds, the automatic stay does not apply and Coreolis and Holdings may pursue such claims without further order of the Court.

###

Copy furnished to:

Thomas R. Lehman, P.A.
Lynn Maynard Gollin, Esq.
Tew Cardenas LLP
Attorneys for the chapter 7
Trustee, Barry Mukamal
1441 Brickell Avenue, 15th Floor
Miami, FL 33131
Telephone: (305) 536-1112
Facsimile: (305) 536-1116

Lynn Maynard Gollin, Esq. [Attorney Gollin shall serve a copy of this Order immediately upon receipt to all interested parties and file a certificate with the Court reflecting said service.]

518164_1