<3c>



**ORDERED in the Southern District of Florida on December 21, 2015.**

A. Jay Cristol, Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA**

In re:

TRADEWINDS AIRLINES, INC.,

      Debtor.
_____/

Case No. 08-20394-BKC-AJC

Chapter 7

**ORDER DENYING MOTION TO COMPEL DISMISSAL OF NEW YORK ACTION AGAINST THE TRUSTEE, HIS PROFESSIONALS AND CERTAIN CREDITORS IN VIOLATION OF THE BARTON DOCTRINE**

On November 2, 2015 a hearing was held by this Court upon the Emergency Motion of Barry Mukamal, Chapter 7 Trustee for the bankruptcy estate of TradeWinds Airlines, Inc. ("TradeWinds"), to Compel Violet Elizabeth Grayson to Dismiss Her Action Filed in New York Asserting Claims Against the Trustee, His Professionals and Certain Creditors in Violation of *Barton* Doctrine [D.E. 699] ("Dismissal Motion"); the Declaration of Prior Special Litigation Counsel Violet Elizabeth Grayson Concerning Filing of Summons With Notice in New York State Court [D.E. 697] ("Grayson Declaration"); the Supplemental Declaration of Prior Special Litigation Counsel Violet Elizabeth Grayson in Opposition to the Dismissal Motion [D.E. 702]

("Supplemental Declaration"); and the Trustee's Reply to the Supplemental Declaration of Prior Special Litigation Counsel Violet Elizabeth Grayson in Opposition to the Dismissal Motion [D.E. 706]. Having considered these filings and the post-hearing filings by Violet Elizabeth Grayson ("Grayson") in the New York State Court, having heard the proffers and arguments of the parties, and having considered relevant case law, the Court denies the Trustee's Dismissal Motion. The Dismissal Motion is moot as it relates to the Trustee and his court-appointed professionals, as special litigation counsel Violet Elizabeth Grayson voluntarily dismissed with prejudice the civil action she initiated against them based on the applicability of the *Barton* Doctrine. With respect to the remaining defendants, the Coreolis creditor entities, the Court believes the *Barton* Doctrine is not applicable to them and, therefore, denies the Dismissal Motion with respect to the Coreolis defendants in the New York State Court.

A.  The New York Action

On August 14, 2015 Violet Elizabeth Grayson ("Grayson"), former special litigation counsel for the Trustee, commenced an action in New York state court by filing a Summons with Notice. *See* Summons with Notice attached as Exhibit A to the Dismissal Motion, *Grayson v. Ressler & Ressler*, Index No. 652816/2015 (N.Y. Supr. Ct., N.Y. Cty.) [D.E. 699] ("New York action"). The defendants named by Grayson in the Summons with Notice are the following (grouped by affiliation): Barry Mukamal, his former firm, Marcum LLP, also known as Marcum Rachlin; Susman Godfrey LLP and Bill Carmody (a partner at Susman Godfrey); Gordon, Rees, Scully & Mansukhani LLP, also known as Gordon & Rees, along with partner Lynn Gollin and former partner Robert Mayer; and Coreolis Holdings, Inc., TradeWinds Holdings, Inc., their affiliates, Orchard Capital Corporation and Richard Ressler, together with their counsel, Ressler

& Ressler and the firm's individual partners, Ellen Werther and Bruce Ressler (collectively, the "Coreolis Entities").

Grayson asserts various causes of action against the defendants including: breach of contract, breach of the covenant of good faith and fair dealing, libel, slander, defamation, fraud, tortious interference with beneficial business relations, tortious interference with contractual relations, tortious inducement of breach of contract, intentional infliction of emotional distress, negligent infliction of emotional distress, illegally obtaining and using credit information, conversion, legal malpractice; negligence, related torts, and conspiracy to commit the foregoing torts. It appears these claims arose from the TradeWinds bankruptcy case and are related to Grayson's termination as the Trustee's special litigation counsel.

On November 2, 2015, the Court held a hearing on the Dismissal Motion. At the conclusion of the hearing, the Court requested that the parties further brief the matter and submit competing proposed orders.

Prior to the post-hearing submissions, on November 5, 2015, Grayson filed a Notice of Discontinuance, effectively dismissing the New York action against the Trustee and his court-appointed professionals. *See* Grayson Declaration Attaching Dismissal of Trustee Parties From New York State Court Action [D.E. 709]. Grayson dismissed from said action the Trustee, his counsel Gordon & Rees, its partners Lynn Gollin and Robert Mayer, the Trustee's former accounting firm, Special Litigation Counsel Susman, Godfrey and Susman partner, Bill Carmody.

1. The Trustee and His Professionals

Clearly, Grayson's action against the Trustee and his professionals, Barry Mukamal, Marcum, Gordon & Rees LLP, Robert Mayer, Lynn Gollin, Susman Godfrey LLP and partner

William Carmody, was commenced without the authority of this Court. Grayson does not dispute that she filed the New York action without first seeking authorization from this Court to do so. Grayson admitted she was not aware that prior authorization from this Court was necessary to commence the action. During the hearing on the Dismissal Motion, Grayson did not dispute that the Trustee and his professionals were protected by the *Barton* Doctrine. Since the hearing, she has dismissed the New York action with respect to the Trustee and his professionals.

    2. The Coreolis Entities

Grayson has not, however, dismissed the Coreolis Entities from the New York action. Grayson contends that none of the defendants included among the Coreolis Entities were authorized by this Court to represent the Trustee or the interests of the estate and are therefore not covered by the *Barton* Doctrine. However, the Trustee argues that the Coreolis Entities are protected by the *Barton* Doctrine because the claims asserted against them by Grayson are intertwined with the claims she asserts against the Trustee and his counsel, involve the administration of the estate, and arise from or relate to the propriety of Grayson's termination as special counsel in this case.

Shortly before TradeWinds filed its Chapter 11 bankruptcy petition on July 25, 2008, the law firm of Tuggle Duggins, P.A. ("TD") was retained to pursue claims on TradeWinds' behalf against C-S Aviation Services, Inc. ("CSA") and its principals in the Superior Court of Guilford County, North Carolina ("North Carolina Case"). Tuggle Duggins prosecuted the North Carolina Case and on June 27, 2008, the court in the North Carolina Case entered a judgment in favor of TradeWinds against CSA in the amount of $54,867,872.49 ("NC Judgment"). [D.E. 229, Ex. C]. In 2008, CSA was a shell corporation with no business operations or assets. The ultimate targets for collection of the NC Judgment were CSA's alleged alter egos, the principals of CSA, George

Soros ("Soros") and Pernendu Chatterjee ("Chatterjee"). TradeWinds commenced a lawsuit to collect the NC Judgment from Soros and Chatterjee in the United States District Court for the Southern District of New York, case styled *TradeWinds v. Soros, et al.*, Case No. 08 CV 5901 ("Veil Piercing Action"). Grayson was retained by TradeWinds post-petition to prosecute the North Carolina Case and Veil Piercing Action [D.E. 118]. Following the October 31, 2008 conversion of the TradeWinds case to a Chapter 7 bankruptcy, the Trustee sought and obtained approval from the Court to continue the retention of Grayson as special litigation counsel. [D.E. 229, 278, 258].

In 2009, TradeWinds' parent companies Coreolis Holdings, Inc. and Tradewinds Holding, Inc. (together, "Coreolis") joined the litigation of the North Carolina Case seeking and obtaining a Default Judgment on independent grounds ("Coreolis NC Judgment," together with the NC Judgment, the "NC Judgments").[1] *See* D.E. 327, ¶11. Subsequently, the trial court vacated the NC Judgments with respect to damages. At this juncture, the Trustee and Coreolis joined forces and cooperatively, sharing costs and litigating a single trial on damages in the North Carolina Case, obtained a damage award for each party, together totaling over $25 million − which amounts were each trebled (the "Judgments"). *See* D.E. 465. The Judgments were affirmed on appeal in 2013 by the North Carolina Supreme Court. *See* North Carolina Supreme Court's Order dated October 23, 2012, D.E. 627-1.

In the interim, in 2010 Coreolis commenced its own veil piercing action, Case No. 10 CV 8175, S.D.N.Y. Coreolis' case was thereafter procedurally consolidated with the Trustee's Veil

---

[1] The Trustee initially sought to prevent Coreolis from seeking a judgment arguing Coreolis' claim was included in TradeWinds' NC Judgment and, as such, was property of the bankruptcy estate. A resolution was reached and approved by the Court allowing Coreolis to proceed to enforce any judgment it obtained against CSA by intervening or otherwise prosecuting a veil piercing action against Soros or Chatterjee [D.E. 345].

Piercing Action (together, the "Veil Piercing Litigation"). The Trustee and Coreolis have been jointly prosecuting the Veil Piercing Litigation since 2010, including entering into a Joint Prosecution, Common Interest and Confidentiality Agreement to facilitate their close cooperation in the prosecution of the Veil Piercing Litigation and assure the confidentiality and privileged nature of their communications in connection with that lawsuit ("Joint Prosecution Agreement").[2] *See* D.E. 666, p. 2.

In addition to jointly prosecuting the Veil Piercing Litigation, the Coreolis Entities have financed a substantial portion of expenses related to that litigation for the benefit of the TradeWinds estate. *See* Trustee's Application to Retain Susman Godfrey, D.E. 641, ¶ 27; Affidavit of William Carmody, D.E. 641-2, ¶ 9(c). The Trustee sought an advance of funds from the Coreolis Entities to finance the Trustee's ongoing prosecution of the Veil Piercing Litigation for the benefit of the estate, as he anticipated substantial litigation expenses related thereto. *See* Declaration of Ellen R. Werther [D.E. 708]. The Coreolis Entities agreed and, upon the selection of Susman Godfrey as replacement special litigation counsel for the Veil Piercing Litigation, Susman Godfrey and the Coreolis Entities entered into an expense sharing agreement. The arrangement was disclosed in the Trustee's Application to Approve Susman Godfrey's Retention. *See* Trustee's Application to Retain Susman Godfrey, D.E. 641, ¶ 27; Affidavit of William Carmody, D.E. 641-2, ¶ 9(c).

The Trustee asserts that, without the support of the Coreolis Entities, the Trustee's retention of Susman Godfrey would have proved difficult. The TradeWinds bankruptcy estate has a fixed amount of funds and obligations outstanding, including fees due the Trustee's

---

[2] Grayson entered into the Joint Prosecution Agreement as special litigation counsel for the Trustee in the Veil Piercing Litigation. All parties to the Joint Prosecution Agreement continue to be bound by the terms thereof, including Grayson, the Trustee, Coreolis and their respective attorneys. *See* Transcript of hearing on Termination Motion [D.E. 649], p. 15, lines 3-7.

professionals. *See* Dismissal Motion, ¶ 8. The Trustee states that the TradeWinds estate could not function without an alternative source of funding for the Veil Piercing Litigation, and as such, the Coreolis Entities' financial support of the Veil Piercing Litigation has preserved a critical potential asset of the TradeWinds bankruptcy estate.

Summary judgment was entered in favor of Soros and Chatterjee in the Veil Piercing Litigation and the Veil Piercing Litigation is currently on appeal to the United States Court of Appeals for the Second Circuit. *See* Trustee's Notice of Filing Opinion and Order and Judgment Entered by U.S. District Court for the Southern District of New York [D.E. 707].

B. <u>Analysis</u>

A party seeking to sue a bankruptcy trustee or his court-approved professionals for actions taken in their official capacity in a court other than the bankruptcy court must first seek and obtain leave to file suit from the bankruptcy court. *See*, *Barton v. Barbour*, 104 U.S. 126, 137, 26 L. Ed. 672 (1881); *Lawrence v. Goldberg*, 573 F.3d 1265, 1269 (11th Cir. 2009); *Carter v. Rodgers*, 220 F.3d 1249 (11th Cir. 2000); *Lebovits v. Scheffel* (*In re Lehal Realty Assocs.*) 101 F.3d 272 (2nd Cir. 1996). The *Barton* court explained why permission and authorization from a home court were necessary to sue a receiver, or in this instance, a trustee:

> The evident purpose of a suitor who brings his action against a receiver without leave is to obtain some advantage over the other claimants upon the assets in the receiver's hands. His judgment, if he recovered one, would be against the defendant in his capacity as receiver, and the execution would run against the property in his hands as such.
>
> If he has the right, in a distinct suit, to prosecute his demand to judgment without leave of the court appointing the receiver, he would have the right to enforce satisfaction of it. By virtue of his judgment he could, unless restrained by injunction, seize upon the property of the trust or attach its credits. If his judgment were recovered outside the territorial jurisdiction of the court by which the receiver was appointed, he could do this, and the court which appointed the receiver and was administering the trust assets would be impotent to restrain him. The effect upon the property of the trust, of any attempt to enforce satisfaction of his judgment, would be precisely the same as if his suit had been brought for the purpose of taking property from the possession of the receiver. A suit

> therefore, brought without leave to recover judgment against a receiver for a money demand, is virtually a suit the purpose of which is, and effect of which may be, to take the property of the trust from his hands and apply it to the payment of the plaintiff's claim, without regard to the rights of other creditors or the orders of the court which is administering the trust property.

*Barton*, 104 U.S. at 128.

The filing of the Summons with Notice by Grayson commenced a lawsuit against the Trustee and his professionals. *Bumpus v. New York City Tr. Auth.*, 66 A.D.3d 26, 31 (N.Y. App. Div. 2d Dep't 2009). Grayson did not seek approval to file the New York action from this Court even though she was clearly aware of the pending TradeWinds bankruptcy case, as she served as one of the Trustee's professionals for several years. Moreover, the New York action would certainly impact the TradeWinds bankruptcy estate by causing assets of the estate to be used defending the Trustee and his professionals in the New York action. Accordingly, Grayson's filing of the New York action against the Trustee and his professionals violated the *Barton* Doctrine.

The question thus remains as to whether the *Barton* Doctrine similarly protects the Coreolis Entities from suit. The *Barton* Doctrine not only protects the trustee and his professionals from suits and claims brought against them without prior approval of the appointing court, *Lowenbraun v. Canary* (*In re Lowenbraun*), 453 F.3d 314, 321 (6th Cir.2006), but additionally, it extends to acts by counsel or others performing as "the functional equivalent of a trustee," where "they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets." *Allard v. Weitzman* (*In re DeLorean Motor Co.*), 991 F.2d 1236, 1241 (6th Cir.1993).

The Trustee argues that bifurcating the Coreolis Entities from the Trustee in this matter would adversely affect the Trustee and impair the interests of the bankruptcy estate. While the

foregoing may prove to be true, the Court does not believe that is the threshold for the applicability of the *Barton* Doctrine. Indeed, the Court is well aware that the Coreolis Entities' financial support has sustained the Trustee's litigation efforts. However, regardless of the resultant effect of their participation, the Coreolis Entities are not acting as the functional equivalent of a trustee or at the direction of the Trustee herein.

None of the Coreolis Entities were appointed or approved as professionals to assist the Trustee in this case. None of them have represented the Trustee or the estate's interests in the Veil Piercing Litigation or in any other action. None of them have taken any actions in an "official capacity" and this Court does not exercise jurisdiction over them. The Coreolis Entities owe no fiduciary duty to the bankruptcy estate, and do not take direction from the Trustee or his professionals. In fact, they have litigated against the Trustee in the past. Thus, although the Court determined Grayson's New York action violated the *Barton* Doctrine to the extent it targeted the alleged acts of the Trustee and his professionals taken in their official capacity, the Court does not believe Grayson's lawsuit as it pertains to each of the named defendants included among the Coreolis Entities violates the Doctrine.

The Coreolis Entities rely on *Lawrence v. Goldberg,* 573 F.3d 1265 (11th Cir. 2009), to support their entitlement to the protection of the *Barton* Doctrine because Coreolis, in seeking to collect its own judgment, split certain litigation expenses with Susman, Godfrey, the firm representing the bankruptcy estate. However, the Court believes the instant case is distinguishable from *Lawrence*. In *Lawrence,* a deep-pocket creditor of a bankruptcy estate, Bear Stearns, advanced funds to assist in recovering property of the bankruptcy estate, which property would become part of the bankruptcy estate, and would subsequently be available to satisfy creditors of the estate. Bear Stearns advanced the costs necessary "to ***recover property of***

*the estate* and would receive payment from recovered assets, if any." *Lawrence,* 573 F.3d at 1269 (emphasis added). The Eleventh Circuit held that because Bear Sterns "financed the Trustee's efforts to locate assets ***on behalf of the estate***" they "functioned as the equivalent of court appointed officers." *Id.* (Emphasis added.)

In this case, the Coreolis Entities did not advance funds to recover assets on behalf of the estate, which would become part of the estate, and then be paid to the Coreolis Entities and other creditors from the estate. Rather, the Coreolis Entities, seeking to pierce the corporate veil of CSA *to recover its own judgment,* agreed to advance and/or split litigation expenses with the Trustee and his professionals. This act does not transform the Coreolis Entities into court-appointed professionals or "the functional equivalent of a trustee," acting at the direction of the trustee and for the purpose of administering the estate or protecting its assets. Any recovery by the Coreolis Entities would not necessarily be shared with estate creditors, or otherwise become part of the bankruptcy estate.

As Judge Kimball noted in *In re Longo,* 2010 Bankr. LEXIS 1305 (Bankr. S.D. Fl. decided April 20, 2010), "In *Lawrence,* the Eleventh Circuit defined the outer limits of the *Barton* doctrine." In so saying, Judge Kimball declined to extend the *Barton* doctrine to the widow of a bankruptcy trustee, who had been named in a suit arising from her late husband's actions in his official capacity. The court observed that the Trustee's widow "did not assist the Former trustee in his official actions" and did "not otherwise function as the equivalent of a court-appointed officer." *Id*.

The expansion of the *Barton* Doctrine urged by the Coreolis Entities is not warranted under the facts of this case. The Trustee's argument [that without the Coreolis Entities' financial support, the Trustee would likely not be able to proceed with the litigation] is a strong equitable

Case No. 08-20394-BKC-AJC

argument, but these facts are not deemed sufficient to bring the Coreolis Entities within the protection of the *Barton* Doctrine. The Coreolis Entities were sharing costs associated with a limited-purpose alliance to benefit themselves and, although the Trustee and the estate may benefit from the Coreolis Entities' participation in the litigation, the Court declines to expand the *Barton* Doctrine to embrace them. It is

**ORDERED AND ADJUDGED** as follows:

1) To the extent that the Dismissal Motion requests dismissal of the Chapter 7 Trustee, his counsel Gordon & Rees, its partners Lynn Gollin and Robert Mayer, the Trustee's former accounting firm ("Marcum" or "Marcum, Rachlin"), Special Litigation Counsel Susman, Godfrey, and Susman partner, Bill Carmody from the New York State Court action, said request is **DENIED AS MOOT**, these parties having already been dismissed from the New York State Court action. The Court reserves jurisdiction to consider a request for damages, if any.

2) To the extent that the Dismissal Motion requests that this Court compel dismissal of Ressler & Ressler, Ellen Werther, Bruce Ressler, TradeWinds Holdings, Inc., Coreolis Holdings Inc., Richard Ressler, and Orchard Capital Corporation from the New York State Court action, the request is **DENIED**.

###

Copy furnished to:

Violet Elizabeth Grayson, Esq.
Lynn Maynard Gollin, Esq.

Attorney Gollin is directed pursuant to Local Rule 5005-1 to serve conformed copies of this Order upon all parties in interest, and file a Certificate of Service with the Court confirming service.